UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| BETTY P., Plaintiff, | ) | |
| v. | ) | Case No. 4:25-CV-1158-SPM |
| FRANK BISIGNANO, Commissioner of Social Security, Defendant. | ) | |

**MEMORANDUM OPINION**

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Frank Bisignano, Commissioner of Social Security (the "Commissioner") denying the applications of Plaintiff Betty P. ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 5). Because I find the decision denying benefits was supported by substantial evidence, I will affirm the Commissioner's denial of Plaintiff's application.

## I. BACKGROUND

In October of 2020, Plaintiff applied for DIB and SSI, alleging that she had been unable to work since August 29, 2020. (Tr. 997-1018). Her applications were denied initially and on reconsideration. (Tr. 865-80). On December 8, 2021, Plaintiff filed a Request for Hearing by Administrative Law Judge ("ALJ"). (Tr. 881-82). On December 6, 2022, the ALJ held a hearing.

(Tr. 749-97). On March 17, 2023, the ALJ issued an unfavorable decision. (Tr. 832-54). On February 7, 2024, the Appeals Council remanded the case to the ALJ for further consideration. (Tr. 855-59). On August 1, 2024, the ALJ held a second hearing. (Tr. 715-48). At the hearing, Plaintiff amended her alleged onset date to September 3, 2021. (Tr. 721). On August 22, 2024, the ALJ issued a second unfavorable decision. (Tr. 688-714). On September 3, 2024, Plaintiff filed a Request for Review of Hearing Decision with the Appeals Council. (Tr. 994-95). On June 18, 2025, the Appeals Counsel denied the request for review. (Tr. 1-6). The decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

At the hearings before the ALJ, Plaintiff testified that her conditions included diabetes with associated symptoms of nausea, throwing up, and sometimes blurry vision; a bad back; osteoarthritis of the knees with pain and swelling; migraine headaches; problems with her shoulder, arm, hands, and feet; dizziness; depression; social anxiety; difficulty concentrating; difficulty getting along with people; issues with self-harm; and panic attacks when she is around lots of people and at night. (Tr. 727-37, 766-88). With respect to Plaintiff's medical records, the Court accepts the facts as set forth in Plaintiff's statement of facts and Defendant's response. Briefly, the record shows that during the relevant period, Plaintiff sought frequent treatment for both her mental and physical health issues and was treated with therapy, medications, and injections. Regarding Plaintiff's physical health, the record contains opinion evidence from two state agency medical consultants who opined that Plaintiff could perform light work with additional limitations, but there is no opinion evidence from any treating or examining source dated during the relevant period. Regarding Plaintiff's mental health, the record contains opinion evidence from state agency psychological consultants who found Plaintiff's mental health

impairments non-severe and opinion evidence from treating providers who found she had marked limitations in every area of functioning assessed.

The Court will cite to specific portions of the transcript as needed to address the parties' arguments.

## II. Standard for Determining Disability Under the Act

To be eligible for benefits under the Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). Under the Act, a person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if the claimant is, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i);

*McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month duration requirement in § 404.1509 or § 416.909], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner finds the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), which is "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can

make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant is found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2), 416.920(a)(4)(v), 416.920(g), 416.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).

## III. THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff had not engaged in substantial gainful activity since September 2, 2021, the amended alleged onset date; that Plaintiff had the severe impairments of osteoarthritis of the bilateral knees, obesity, asthma, diabetes mellitus (type II), major depressive disorder, posttraumatic stress disorder, and borderline personality disorder; and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (Tr. 694-97). The ALJ found that Plaintiff had the following RFC:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: she can occasionally climb ramps, stairs, ladders, ropes, and scaffolds, can occasionally kneel, crouch, and crawl, and must avoid concentrated exposure to wetness, humidity, fumes, odors, dusts, gases, poor ventilation, and hazards such as moving machinery and unprotected heights. She can perform only simple, routine, and repetitive tasks, requiring only simple work-related decisions, with few changes in the routine work setting, and no more than occasional interaction with supervisors, coworkers, and the general public. She can maintain the concentration required to perform simple tasks, remember simple work-like procedures, and make simple work-related decisions, she can stay on task and, thereby, meet production requirements.

(Tr. 697). At Step Four, the ALJ found Plaintiff had no past relevant work. (Tr. 704). At Step Five, relying on the testimony of a vocational expert, the ALJ found that there were jobs existing in significant numbers in the national economy that Plaintiff could perform, including representative occupations such as product inspector, assembler, and packer. (Tr. 705). Accordingly, the ALJ found Plaintiff had not been under a disability, as defined in the Act, from September 2, 2021, through the date of the decision. (Tr. 706).

## IV. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 58 F.3d 979, 981 (8th Cir. 2008)); *see also Estes v. Barnhart,* 275 F.3d 722, 724 (8th Cir. 2002); 42 U.S.C. §§ 405(g); 1383(c)(3). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942 (quotation marks omitted). *See also Biestek*, 587 U.S. at 103 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consol. Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations

regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

The Court reviews de novo whether the Commissioner's determination was based on legal error. *Dewey v. Astrue*, 509 F.3d 447, 449 (8th Cir. 2007) (citing *Miles v. Barnhart*, 374 F.3d 694, 698 (8th Cir. 2004) & *Keller v. Shalala,* 26 F.3d 856, 858 (8th Cir. 1994)). "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." *Collins v. Astrue,* 648 F.3d 869, 871 (8th Cir. 2011) (internal citations omitted).

## V. DISCUSSION

Plaintiff challenges the ALJ's decision on three grounds: (A) that the ALJ did not properly evaluate Plaintiff's subjective complaints of pain and other symptoms; (B) that the ALJ erred by failing to evaluate Plaintiff's migraine headaches; and (C) that the RFC is not supported by substantial evidence.

### A. Plaintiff's Subjective Complaints

Plaintiff's first argument is that the ALJ failed to properly evaluate Plaintiff's subjective complaints of pain and other symptoms, such as dizziness.[1] When evaluating the claimant's subjective complaints, the ALJ must consider all of the evidence, including objective medical evidence, the claimant's work history, and evidence relating to the *Polaski* factors: (i) the

[1] Plaintiff's argument on this point is limited to her physical symptoms; she does not address the ALJ's evaluation of her subjective complaints of mental symptoms.

claimant's daily activities; (ii) the duration, frequency, and intensity of the claimant's pain; (iii) precipitating and aggravating factors; (iv) the dosage, effectiveness, and side effects of medication; and (v) the claimant's functional restrictions." *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (citing *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984)). *See also* 20 C.F.R. §§ 404.1529(c), 416.929(c). "The ALJ is not required to discuss each *Polaski* factor as long as 'he acknowledges and considers the factors before discounting a claimant's subjective complaints.'" *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010) (quoting *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009)). "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017). The Court will defer to the ALJ's assessment of a claimant's subjective complaints where the assessment is "supported by good reasons and substantial evidence." *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019).

Here, the ALJ acknowledged that Plaintiff had significant pain and stiffness, and based on those symptoms, the ALJ limited Plaintiff to light work with only occasional climbing stairs, ramps, ladders, ropes, and scaffolds, only occasional kneeling, crouching, and crawling, and avoiding concentrated exposure hazards, operational control of moving machinery and hazardous machinery. (Tr. 697-701). To the extent that the ALJ did discount Plaintiff's physical complaints, the ALJ conducted an adequate assessment, consistent with SSR 16-3p and the relevant regulations and supported by substantial evidence. The ALJ expressly cited 20 C.F.R. § 404.1529, § 416.929, and SSR 16-3p; discussed Plaintiff's reports of pain and other symptoms in her testimony and function report; discussed Plaintiff's reports of pain to her treatment providers and the relevant

medical evidence at length; and made a specific finding that Plaintiff's claims concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 697-700). A review of the record shows that the ALJ considered and discussed several of the relevant factors in evaluating Plaintiff's subjective complaints, including objective examination results showing tenderness and sometimes limited range of motion but also usually showing a normal gait, an ability to stand and walk on heels and toes and tandem walk, no edema, normal stability testing, normal or near-normal motor strength, only "mild" median neuropathies, and only "mild" arthritis in her wrists (Tr. 273, 344, 699-701, 2107, 2150, 2227, 2275, 2324, 2360, 2389, 2418, 2422, 2472, 2672, 3256); Plaintiff's daily activities, which included walking to her mother's house, walking to the store, and watching a baby and up to three other children (Tr. 701, 1614, 1970, 2088, 2200, 2210, 2204, 2233, 2238, 2853, 2909, 2941); visits to Plaintiff's providers at which she denied dizziness and headaches (Tr. 700, 2625, 2727, 2818, 2882, 2862); evidence that Plaintiff experienced "good improvement" in her right knee pain after an injection and had "minimal pain" for about four months thereafter (Tr. 700, 3439); and evidence that Plaintiff was treated conservatively and did not require surgical intervention or an assistive device to ambulate (Tr. 700). The ALJ thus reasonably considered several of the relevant factors in determining that Plaintiff's subjective complaints were not as limiting as she alleged. The Court also finds it significant that the record contains no opinion evidence indicating that Plaintiff's physical abilities were more limited than is reflected in the RFC.

The Court acknowledges that the record contains evidence that tends to support Plaintiff's argument that her symptoms were more limiting than the ALJ found, including MRI findings late in the relevant period showing moderate to severe degenerative changes in the right knee and

evidence that toward the end of the relevant period, her providers were considering surgery on her right knee that could not yet be done because her diabetes was not well controlled. (Tr. 3086). The ALJ could certainly have weighed the evidence differently and reached a different conclusion than he did. However, it is not the Court's role to reweigh the evidence. "The credibility of a claimant's subjective symptoms is primarily for the ALJ to decide, not the courts." *Igo v. Colvin*, 839 F.3d 724, 731 (8th Cir. 2016) (quotation marks omitted). Although it is a somewhat close call, the Court finds that the ALJ's analysis of Plaintiff's subjective complaints of pain was consistent with the regulations and was supported by substantial evidence. The Court will therefore defer to that assessment. *See Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018) ("This court defers to the ALJ's determinations 'as long as good reasons and substantial evidence support the ALJ's evaluation of credibility.'") (quoting *Julin*, 826 F.3d at 1086).

**B. Plaintiff's Migraine Headaches**

Plaintiff's second argument is that the ALJ erred by failing to find Plaintiff's migraines were a severe impairment and by failing to discuss Plaintiff's migraines in the decision. As discussed above, at Step Two, the Commissioner must determine whether the claimant has a severe medically determinable physical or mental impairment that meets the 12-month duration requirement. To be a "severe impairment," an impairment must "significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1522(a), 416.922(a). Basic work activities are "the abilities and aptitudes necessary to do most jobs." §§ 404.1522(b), 416.922(b). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). "Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard," and the Eighth Circuit

has "upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing." *Id.* (internal citation omitted).

The Court finds no error. Although Plaintiff testified at the second hearing that she had migraine headaches and associated dizziness once or twice a week that required her to lie down in a dark room with a towel over her eyes (Tr. 733-35), Plaintiff very rarely complained of severe headaches or migraines to her treatment providers during the relevant period. At one visit in April 2023, she reported "horrific" headaches that caused her to have to sit in the dark because the light made her feel dizzy and hurt her eyes. (Tr. 2900-02). However, it appears that these severe headaches were a temporary condition related to her having hit her head on the toilet seat the prior week, which she thought had caused a concussion. (Tr. 2900). Notably, she was negative for headaches at several visits both before and after that visit. (Tr. 2626, 2727, 2741, 2818, 2821, 2827, 2858, 2862, 2882, 2924, 2936). She sometimes mentioned headaches or "some dull head pressures" (Tr. 2704), but not the type of severe headaches she discussed in her testimony. In early 2024, she sought treatment for migraines and associated dizziness, but she reported that the medication she was prescribed (Nurtec) "takes the headache away" (Tr. 3187) and "works well to relieve the headaches" (Tr. 3195). Although Plaintiff eventually reported that the Nurtec was no longer working, that did not occur until after the relevant period had ended. (Tr. 18). Indeed, most of the treatment records Plaintiff relies on for this argument are dated after the relevant period. (Tr. 9, 15, 18, 23, 35, 51, 96).

In sum, the record shows that Plaintiff rarely had migraine headaches during the relevant period and that when she did, they were controllable with medication and did not significantly limit her ability to perform work-related activities. Substantial evidence supports a finding that her migraine headaches were not a severe impairment and did not require any additional limitations in

the RFC. *See Martise v. Astrue*, 641 F.3d 909, 924 (8th Cir. 2011) (finding ALJ did not err in finding migraine headaches were not a severe impairment; stating, "Because Martise's migraine headaches are controllable and amenable to treatment, they do not support a finding of disability.") (internal quotation marks omitted).

**C. The RFC Assessment**

Plaintiff's final argument is that the RFC assessment is not supported by substantial evidence. The Court will address separately Plaintiff's arguments with respect to the physical and mental RFC findings.

With respect to the physical RFC, Plaintiff argues that the ALJ improperly adopted the November 2021 opinion of a state agency non-examining doctor, Charity Sandvos, M.D. Plaintiff argues that Dr. Sandvos's opinions lacked a discussion or explanation of the records she had available for review, that it is unclear how the findings she reviewed supported her opinion, and that her opinion predated thousands of pages of medical records.[2] Plaintiff also notes that Dr. Sandvos relied in part on the findings of a one-time consultative examination that occurred prior to the alleged onset date, and she argues that "[i]t is impossible to say that the RFC is supported by substantial evidence when it is based upon a one-time physical exam performed over 3 years prior to the hearing and without the benefit of several years' worth of additional treatment records." ECF No. 15, at 10.

The Court finds these arguments unpersuasive and finds the physical RFC was supported by substantial evidence. "When assessing a claimant's RFC, the ALJ must consider all relevant

---

[2] Plaintiff does not argue that the ALJ failed to properly evaluate Dr. Sandvos's opinion under the regulations governing evaluation of medical opinion evidence. The Court finds that the ALJ properly explained his evaluation of the supportability and consistency of these opinions, as required by the regulations. *See* 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

evidence in the record." *Julin v. Colvin*, 826 F.3d 1082, 1089 (8th Cir. 2016) (emphases added) (citing *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007)). An ALJ "may embrace a state agency [medical] consultant's opinion even if it was made before the record was fully developed" and "may also assign significant weight to the opinion of a state agency medical consultant who did not have access to all of the records, so long as the ALJ conducts an independent review of the evidence and takes into account the portions of the record the consultant had not considered." *Kuikka v. Berryhill*, No. 17-CV-374 (HB), 2018 WL 1342482, at *10 (D. Minn. Mar. 15, 2018). That is what the ALJ did in this case. The ALJ did not simply adopt Dr. Sandvos's opinion; instead, the ALJ independently reviewed and discussed at length all of the relevant medical and non-medical evidence, including the evidence dated after Dr. Sandvos's opinion, and reached an RFC assessment consistent with Dr. Sandvos's opinion. This was appropriate. *See id.* at *10 (finding substantial evidence supported the RFC finding where the ALJ "did not solely rely on" the state agency consultants' opinions but viewed them "as one part of a broader record"); *Jones v. Kijakazi*, No. 1:23-CV-00016-SNLJ, 2024 WL 3509498, at *4 (E.D. Mo. July 23, 2024) (rejecting the argument that the ALJ erred by relying in part on medical opinions from doctors who were unaware of later medical findings; stating, "[T]he ALJ must—and did—consider the earlier findings *in light of* the updated findings when making her RFC determination. But the earlier medical opinions still provide insight into plaintiff's multifaceted allegations of disability."). Moreover, as discussed in the Commissioner's brief, the physical RFC limiting Plaintiff to light work with additional postural and environmental limitations was supported by substantial evidence, including not only Dr. Sandvos's opinion but also the later-developed evidence of mild or normal objective examination findings and Plaintiff's response to treatment discussed above and in the Commissioner's brief.

The Court also notes that the record contained no opinion evidence from any medical source indicating that Plaintiff had impairments more severe than those reflected in the RFC.

With respect to the mental RFC, Plaintiff argues that the ALJ improperly formulated the RFC based on his own interpretation of the mental status examination findings in the record instead of relying on the opinions of Plaintiff's treating providers.[3] This argument is also unpersuasive. Although the mental RFC assessment does not mirror any of the opinions in the record, it is well-established that the ALJ is "not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians" in determining a claimant's RFC. *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (quotation marks omitted)); *Hensley v. Colvin,* 829 F.3d 926, 932 (8th Cir. 2016) ("[T]here is no requirement that an RFC finding be supported by a specific medical opinion."). Instead, "[i]t is the ALJ's responsibility to determine [claimant's] RFC based on all the relevant evidence." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Here, although the RFC did not mirror any of the particular opinions in the record, the ALJ properly determined Plaintiff's mental RFC based on all of the evidence in the record. The record contained opinion evidence from state agency consultants who found that Plaintiff's mental impairments were not severe and opinion evidence from treating providers who found that Plaintiff had marked limitations in every area assessed. After discussing and evaluating these opinions in detail and discussing the other evidence in the record relevant to Plaintiff's mental impairments, the ALJ found none of these opinions persuasive. He formulated a mental RFC assessment that

[3] As with the opinion of Dr. Sandvos, Plaintiff does not argue that the ALJ failed to properly evaluate the opinions of Plaintiff's treatment providers under the regulations governing evaluation of medical opinion evidence. The Court finds that the ALJ properly explained his evaluation of the supportability and consistency of these opinions, as required by the regulations. *See* 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

was significantly more limiting than suggested by the state agency consultants but significantly less limiting than suggested by the treating providers: he limited Plaintiff to only simple, routine and repetitive tasks, requiring only simple work-related decisions, with few changes in the routine work setting; no more than occasional interaction with supervisors, coworkers, and the general public; and requiring only the concentration required to perform simple tasks, remember simple work-like procedures, and make simple work-related decisions. This assessment was supported by evidence that although Plaintiff often had a depressed mood and sometimes had vacillating thoughts of suicide, she also had good insight and judgment, and at many visits, she was found to have fairly normal mental status examination findings. (Tr. 702, 1615, 1623, 1631, 1796, 1979, 2015, 2067, 2121, 2161, 2176, 2184, 2205, 2240, 2388, 2716, 2876, 2879, 2891, 2913-14, 2932). The assessment was also supported by the evidence that Plaintiff was caring for her mother and up to three children during the relevant time period, suggesting that she was not as limited in every area of mental functioning as her treatment providers indicated. (Tr. 703-04).

In sum, the Court finds that the RFC assessment is supported by substantial evidence and fell within the available zone of choice, and the Court will not disturb it merely because the evidence would have supported a contrary conclusion. *See Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) ("We will not disturb the denial of benefits so long as the ALJ's decision falls within the available zone of choice. An ALJ's decision is not outside the zone of choice simply because we might have reached a different conclusion had we been the initial finder of fact.").

## VI. CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 23rd day of September, 2026.